Frances EVANS, Appellant,

v.

COURT OF COMMON PLEAS, DELAWARE COUNTY, PENNSYLVANIA, the Attorney General of the Commonwealth of Pennsylvania, the District Attorney of Delaware County.

No. 90–1949.

United States Court of Appeals,
Third Circuit.

Argued July 24, 1991.

Decided March 18, 1992.

Rehearing and Rehearing In Banc
Denied April 13, 1992.

Peter Goldberger, Pamela A. Wilk (argued), Philadelphia, Pa., for appellant.

Ann A. Osborne (argued), Asst. Dist. Atty., Dennis C. McAndrews, Deputy Dist. Atty., William H. Ryan, Jr., Dist. Atty., Media, Pa., for appellee.

Before SLOVITER, Chief Judge, GREENBERG, Circuit Judge and McCLURE, District Judge.*

OPINION OF THE COURT

SLOVITER, Chief Judge.

Petitioner Frances Evans appeals to this court from the district court's order dismissing her petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291. Evans, a state prisoner whose conviction has been vacated because of evidentiary errors and who faces a retrial in state court, argues that the district court erred in dismissing her federal habeas corpus petition on the ground of failure to exhaust. We agree with Evans, but must then determine whether a federal court may consider the merits of a state prisoner's challenge to the evidence presented in her first trial before her state-ordered retrial. Implicated in the resolution of this question are important issues of federalism and comity.

## I.

### Procedural and Factual History

It is conceded that on September 28, 1984, Evans shot her husband in their home, fatally wounding him. In her subsequent murder trial in the Pennsylvania Court of Common Pleas, Delaware County, Evans contended that after enduring years of physical abuse from her husband, she used her husband's gun in self-defense to ward off a deadly attack. Following a three-day trial, a jury acquitted Evans of first-degree murder[1] but convicted her on a charge of third-degree murder.[2] The trial court sentenced Evans to serve five to ten years in prison, the mandatory minimum sentence under Pennsylvania state law for certain crimes, including third-degree murder, committed with a firearm.

On direct appeal to the Pennsylvania Superior Court, Evans argued, *inter alia,* that the evidence presented at trial was insufficient to prove that she had the requisite malice for third-degree murder and insufficient to demonstrate that she had not acted in self-defense. In an unpublished opinion, the Superior Court explicitly found that the evidence was sufficient to support Evans's conviction, but held that two trial errors required reversal and remanded the case for a new trial.[3] *Commonwealth v. Evans,* 383 Pa.Super. 663, 550 A.2d 248 (1988) (noting the decision). The Pennsylvania Supreme Court denied Evans's petition for allowance of appeal. *Commonwealth v. Evans,* 522 Pa. 594, 562 A.2d 319 (1989). Thereafter, that same court granted the Commonwealth's cross-petition challenging the grant of a new trial. Following full briefing and argument, the Supreme Court dismissed the Commonwealth's appeal as improvidently granted. *Commonwealth v. Evans,* 524 Pa. 97, 569 A.2d 349 (1990). Evans obtained a stay of retrial from Chief Justice Nix of the Pennsylvania Supreme Court; that stay was dissolved after Evans's petition for a writ of certiorari to the United States Supreme Court was denied. *Evans v. Pennsylvania,* — U.S. ——, 110 S.Ct. 3280, 111 L.Ed.2d 789 (1990).

Evans then filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania, contending that her due process rights under the Fourteenth Amendment were violated because of the insufficiency of the evidence adduced at her trial to prove malice or to disprove self-defense and the Superior Court's exclusive reliance on a presumption of malice from use of a deadly weapon.

In its response to Evans's petition, the Commonwealth conceded that Evans had

---

* Hon. James F. McClure, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

1. 18 Pa.Cons.Stat.Ann. § 2502(a) (1983).

2. 18 Pa.Cons.Stat.Ann. § 2502(c) (1983). Evans was also found guilty of aggravated assault, simple assault and reckless endangerment of another person. These counts merged into the third-degree murder conviction.

3. In its opinion, the Superior Court concluded that the failure of Evans's trial counsel to object to certain remarks in the prosecution's closing statement constituted ineffective assistance of counsel, and that the trial court erred when it admitted evidence of an altercation between Evans and her husband that had occurred over eighteen years before the date of the trial.

exhausted all available avenues of relief at the state level. Nevertheless, the magistrate issued a Report and Recommendation recommending that the petition be denied for failure to exhaust state remedies. Evans filed timely objections, but the district court summarily adopted the magistrate's Report and Recommendation and dismissed the petition without prejudice for failure to exhaust state court remedies. Thereafter, the district court issued a memorandum opinion overruling Evans's objections to the magistrate's report and again dismissing Evans's petition without prejudice. *Evans v. Court of Common Pleas*, No. 90–5036, 1990 WL 223071 (E.D.Pa. Dec. 19, 1990) (Memorandum Opinion).

In its opinion, the district court reasoned that Evans had failed to exhaust her federal constitutional claim in state court because "Evans did not claim constitutional error until her petition [for] allocatur [to the state supreme court]."[4] The district court also found that Evans still had the opportunity to present her federal claims to state court under the Pennsylvania Post Conviction Relief Act, 42 Pa. Const. Stat. Ann. § 9541 *et seq.* (Purdon Supp.1991). The court recognized that in *Moore v. De-Young*, 515 F.2d 437, 443 (3d Cir.1975), this court had left open the possibility that pretrial habeas review without exhaustion might be available if "extraordinary circumstances are present," but it rejected Evans's contention that the alleged potential violation of her constitutionally guaranteed right against double jeopardy rendered this case "extraordinary". The court grounded its decision in the interests of comity and stated that "[t]here is no evidence that Evans is procedurally or otherwise foreclosed from asserting her double jeopardy claim at pretrial or in a collateral state court proceeding."[5]

This court granted a certificate of probable cause under 28 U.S.C. § 2253, ordered a stay of the proceedings in the state court under 28 U.S.C. § 2251, and appointed counsel. The issue whether state remedies have been exhausted is subject to our plenary review. *Schandelmeier v. Cunningham*, 819 F.2d 52, 54 (3d Cir.1986).

## II.

### Exhaustion

### A.

### General Principles

In general, absent a valid excuse, a prisoner must first present all federal claims to the state court. 28 U.S.C. § 2254(b). The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights. *O'Halloran v. Ryan*, 835 F.2d 506, 509 (3d Cir.1987).

 The general principles covering the responsibility of the petitioner to exhaust all federal claims are now fairly well established. The exhaustion requirement is satisfied when the state courts have had an opportunity to pass upon and correct alleged constitutional violations. A claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court. A claim is not deemed exhausted if it is raised for the first time in the state's highest court on discretionary review. *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). However, a petitioner who has raised the claim on direct appeal need not raise it again in a state postconviction proceeding. *Swanger v. Zimmermann*, 750 F.2d 291, 295 (3d Cir.1984).

4. In her appeal to the Superior Court, Evans challenged "the evidence [as] insufficient to refute the defendant's claim of self-defense or to prove malice." In her petition for allocatur to the state supreme court, Evans challenged "the evidence [as] insufficient to prove Third Degree Murder and to refute self defense, *in violation of the U.S. Constitution's Due Process Clause*" (emphasis added). The district court found this difference in phrasing to be fatal to Evans's federal claims that the evidence was constitutionally insufficient.

5. The court did note, however, that "[i]n view of the ruling of the Superior Court on Evans' insufficiency of the evidence claims, this effort may prove futile."

■ Of particular significance to the issue before us is whether the federal claim has been "fairly presented" to the state courts. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Santana v. Fenton,* 685 F.2d 71, 74 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983). Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir. 1986), and the same method of legal analysis must be available to the state court as will be employed in the federal court, *Santana,* 685 F.2d at 74.

■ Exhaustion is not a jurisdictional requirement, but rather a rule of comity, and a federal court may in certain circumstances decide the merits of a claim despite non-exhaustion. If the "petitioner has no opportunity to obtain redress in the state court or the state corrective process is so deficient as to render any effort to obtain relief futile," exhaustion is not required. *Gibson,* 805 F.2d at 138. In addition, a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer,* 481 U.S. 129, 135, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987).

### B.

#### *Application*

1. Fair Presentation

■ It is undisputed that in state court, Evans's challenge to the sufficiency of the evidence to support her third-degree murder conviction was never expressed as a federal due process violation until Evans so alleged, for the first time, in her petition for allocatur to the Pennsylvania Supreme Court. Pennsylvania courts addressing insufficiency of evidence claims generally ground their decisions in state law if the appellant has not argued that federal due process is implicated. Although at least

one Pennsylvania Superior Court decision involving an insufficiency of evidence claim cited federal precedent, *see Commonwealth v. Azim,* 313 Pa.Super. 310, 459 A.2d 1244, 1246 (1983) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), that does not appear to be the general practice. In this case, the Superior Court opinion did consider Evans's argument on the insufficiency of the evidence, but the court did not expressly refer to federal law, nor did either of the two cases it cited to support its decision. Finally, even Evans's Superior Court brief failed to refer to federal law.

Nonetheless, this court and our sister circuits have looked to the substance of the claim presented to the state courts, rather than its technical designation. In *Bisaccia v. Attorney General of the State of New Jersey,* 623 F.2d 307 (3d Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980), a state prisoner argued unsuccessfully in the state courts that the trial court had erred in allowing into evidence the guilty plea of a co-conspirator without a limiting instruction. In his habeas petition, Bisaccia asserted for the first time that admitting the contested evidence violated his Fourteenth Amendment due process rights. The district court denied the habeas petition on the ground that the petitioner had failed to exhaust his constitutional argument, but we reversed because we found that the state appeal and the habeas petition were similar enough to satisfy the requirements for exhaustion. The petitioner's state claim, we reasoned, had led the New Jersey Supreme Court into "a method of analysis consistent with Fourteenth Amendment due process determinations." *Id.* at 311. We concluded that "[b]ecause the substance of the appellant's state claim is virtually indistinguishable from the due process allegation now before the federal court, and because the method of analysis is indistinct, ... exhaustion of state remedies has been met." *Id.* at 312.

We also find instructive the analysis in *Daye v. Attorney General of New York,* 696 F.2d 186 (2d Cir.1982) (en banc), where the court explored at length the issue of fair presentation. Daye had argued in the

state courts that the partiality of the trial judge had denied him a "fair trial." In the federal habeas proceeding, the Second Circuit considered whether that claim sufficiently raised the constitutional issues Daye later urged in federal habeas. The court noted that the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, "include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 194. The court concluded that Daye had fairly presented his federal constitutional claims in state court because the state cases Daye cited, which themselves noted federal precedent, put the New York state courts on notice of his federal claim.

A similar analysis appears in *Nadworny v. Fair,* 872 F.2d 1093 (1st Cir.1989), where the court held that a state prisoner had fairly presented his federal constitutional claims, despite his failure to state explicitly the federal nature of his claim or cite federal precedent in his state court papers. The *Nadworny* court stated that when deciding whether a federal claim has been fairly presented, "[t]he appropriate focus ... centers on the *likelihood* that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours." *Id.* at 1098.

Although "[s]ubstantive deviations between superficially similar federal and state claims often exist," *id.* at 1100, if an individual's claim, arising under and assert-

ed in terms of state law, is "functionally identical—a point of more than trifling concern" to the federal claim, "we must regard the federal claim as fairly presented." *Id.* at 1099–1100.

In *Nadworny,* as here, petitioner's claim was that the evidence was insufficient. In holding that the federal claim had been exhausted, the court found it relevant that the state admitted at oral argument that "the test for reviewing sufficiency of the evidence is essentially identical under [Massachusetts] state law as under the Constitution," and that Nadworny had not "advanced any new factual allegations in the district court." *Id.* at 1102.

Finally, in *Tamapua v. Shimoda,* 796 F.2d 261 (9th Cir.1986), petitioner had argued throughout the state system that his conviction was based on insufficient evidence because the indictment did not allege facts sufficient to support a charge of theft. Although petitioner did not argue to the state courts that his conviction violated his federally guaranteed right to due process of law, the Ninth Circuit concluded that he had exhausted that claim because his "primary contention in the state court proceedings was that his conviction was based on insufficient evidence. Sufficiency of evidence to convict is a fundamental concern of the due process clause." *Id.* at 263. Therefore, petitioner's failure to "invoke the talismanic phrase 'due process of law' in the state proceedings" was not fatal to his claim for habeas relief. *Id.*

In the case before us, Evans correctly points out that the test for insufficiency of the evidence is the same under both Pennsylvania and federal law.[6] As in *Nadworny,* counsel for the state even conceded this point at oral argument. As such the " 'method of analysis' asserted in the feder-

---

**6.** In *Jackson v. Virginia,* the Supreme Court held that in evaluating a federal habeas petitioner's challenge to the sufficiency of the evidence the question for the court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Superior Court opinion in the instant case de-

scribed the inquiry under Pennsylvania law as follows:

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt.

al courts was readily available to the state court." *Bisaccia,* 623 F.2d at 310.

In addition, Evans's insufficiency of the evidence claims qualify as an "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution." *Daye,* 696 F.2d at 194. *See* note 4 *supra.* The Supreme Court's holding in *Jackson v. Virginia,* 443 U.S. at 322, 99 S.Ct. at 2791, that "a challenge to a state conviction brought on the ground that the evidence cannot fairly be deemed sufficient to have established guilty beyond a reasonable doubt states a constitutional claim," established that an insufficiency of the evidence claim necessarily implicates federal due process rights.

Evans's case is unlike that presented in *Gibson v. Scheidemantel,* 805 F.2d 135 (3d Cir.1986), relied on by the district court. In *Gibson,* petitioner had presented an ineffective assistance of counsel claim to the state courts, but he had not asserted the same basis for that claim that he later presented to the federal habeas court. We held that because the state courts could not have been expected to consider a claim that was never made, it had not been exhausted. In contrast, in this case, Evans's federal due process claim is the "substantial equivalent of that presented to the state courts." *Landano v. Rafferty,* 897 F.2d 661, 668 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990), and therefore we agree with Evans that she adequately satisfied the exhaustion requirement.

**2. *Granberry v. Greer***

■ In any event, in light of the state's failure to raise exhaustion in the district court, *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), gives us authority to reach the merits of Evans's claims. In *Granberry,* the Supreme Court stated that when the state has not raised the non-exhaustion objection in the district court, the court of appeals "should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of

petitioner's claim." *Id.* at 134, 107 S.Ct. at 1675.

It is unreasonable to expect that the result would be any different if Evans were to return to state court, because the formulation of the Pennsylvania test for insufficiency of the evidence is almost identical to that under federal law. Moreover, the principal issue we must decide, *i.e.,* the availability of habeas relief at this stage of the state proceedings, itself implicates concerns about federalism and comity. It would be ironic were we to use exhaustion as the vehicle by which we could avoid addressing those issues. Therefore, in light of *Granberry* and our conclusion that Evans's constitutional claim has been adequately exhausted, we will consider the more basic issue of the availability of habeas relief before Evans's retrial ordered by the state court.

## III.

### *Availability of Pretrial Review*

Evans argues in this court, as she did in the district court, that she is entitled to have a federal court review the sufficiency of the evidence presented at her first trial because of "the double jeopardy ramifications" of having to undergo a retrial in the state courts. The district court held that Evans failed to present "her claim of double jeopardy to the state courts for adjudication and hence had failed to exhaust her state remedies." This conclusion suggests that Evans proffered a double jeopardy claim in her habeas petition. On the contrary, as we discussed above, the claims on which Evans seeks habeas review are alleged due process violations related to the insufficiency of evidence presented at her first trial. Those claims, set out verbatim in Evans's own words, are:

A. Evidence insufficient to prove malice or to disprove self defense, (both of these are elements of the offense of Third Degree Murder), in violation of 14th Amend. due process.

B. Superior Court's exclusive reliance on presumption of malice from use of deadly weapon to uphold sufficiency of

evidence violated due process under 14th Amend.

As we have concluded previously, these claims were exhausted. It is true that Evans has alluded to double jeopardy throughout her federal proceedings, arguing that habeas review is necessary to avoid exposing her to double jeopardy. However, we must distinguish between Evans's invocation of the Double Jeopardy Clause to support her claim to habeas review at this time and a substantive habeas claim based on violation of the Double Jeopardy Clause. Evans concedes that her "federal habeas petition does not raise a double jeopardy claim in and of itself." Appellant's Brief at 11. Thus, there was no need for her to present any double jeopardy claim to the state courts in advance of filing her petition for habeas corpus.

■ We are therefore faced with the legal question whether a federal habeas corpus proceeding may be maintained before Evans has been retried in state court.

It is an underlying principle of federal habeas corpus law ever since the decision in *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), that "federal habeas corpus does not lie, absent 'special circumstances,' to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973). The rule barring pretrial intervention into pending state criminal proceedings by way of federal habeas corpus or otherwise is premised on the notion of comity, a principle of deference and "proper respect" for state governmental functions in our federal system. *See Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

In no area of the law is the need for a federal court to stay its hand pending completion of state proceedings more evident than in the case of pending criminal proceedings. Indeed, the holding in *Younger* that a federal court may not ordinarily enjoin a state criminal proceeding, even when the state court action may be based on an unconstitutional statute, presumes that state courts should be "left free to perform their separate functions in their separate ways." *Id.* Evans now stands ready to be tried, her conviction for third-degree murder having been reversed by the state appellate court. The state's criminal process is incomplete, and federal habeas review of the evidence presented at her first trial patently would be intrusive into the state's ongoing criminal process.

■ Of course, *Younger* recognized that there may be exceptions to the general preclusion of federal intervention into a state criminal proceeding. It referred, for example, to the exception based upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755. Nonetheless, even a claim of prosecutorial vindictiveness will not suffice to overcome the general principle that federal review of a criminal prosecution is unavailable before the state proceeding is completed. *See Flynt v. Ohio*, 451 U.S. 619, 101 S.Ct. 1958, 68 L.Ed.2d 489 (1981) (declining to review claim of publisher of *Hustler* magazine that he was being selectively prosecuted by state officials for obscenity because state criminal trial not completed).

Another exception to the preclusion of pretrial habeas review has been posited for a state defendant who seeks to prevent a retrial that would violate the Double Jeopardy Clause. *See generally*, Collins, *The Right to Avoid Trial: Justifying Federal Court Intervention Into Ongoing State Court Proceedings*, 66 N.C.L.Rev. 49, 65 (1987). Evans argues that this case presents "special circumstances" that are analogous to those this court has previously recognized. For example, in *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir.1975), a case relied on by Evans, the state court had twice declared a mistrial over defendant's objection that it was premature, and defendant sought habeas review to prevent a third trial that would allegedly violate his right not to be put into double jeopardy. This court assumed jurisdiction because "forcing Webb to trial would defeat the

constitutional right Webb seeks to preserve, and because Webb has already been compelled to twice undergo the rigors of a trial devoted to these charges." *Id.* at 1039. We reviewed the record and held that because there was an inadequate basis to discharge the jurors at Webb's second trial, the Double Jeopardy Clause barred any further attempt by the Commonwealth to try Webb again.

Our decision in *Webb* followed our decision in *United States ex rel. Russo v. Superior Court of New Jersey*, 483 F.2d 7 (3d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973), where we held that because the state court had declared a mistrial over the defendant's objection when there was no "manifest necessity," the federal court must issue a writ of habeas corpus to prevent a second trial.

However, no decision of this court has applied the *Webb* and *Russo* analysis to a defendant who faces a new trial because a state appellate court agreed with her objection to certain evidentiary rulings. We are aware that the Sixth Circuit has held that a defendant in Evans's situation may seek to prevent a retrial on double jeopardy grounds by bringing a habeas action based on a substantial issue of sufficiency of the evidence at the first trial. *See Delk v. Atkinson*, 665 F.2d 90 (6th Cir.1981). We believe that the Sixth Circuit's decision cannot withstand subsequent Supreme Court analysis of this issue, and thus decline to extend the limited "special circumstances" recognized in *Webb* and *Russo* to Evans's situation.

We must begin our discussion with the undisputed proposition that the Double Jeopardy Clause does not bar retrial after appellate reversal for trial error. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the principal authority upon which the Sixth Circuit's *Delk* decision was based, the Court held that once a reviewing court reverses a conviction for insufficiency of evidence, the Double Jeopardy Clause of the Fifth Amendment does forbid a retrial. *See also Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978) (applying Double Jeopardy Clause in same manner to state convictions that have been overturned on appellate review for evidentiary insufficiency). The rationale for *Burks*, as the Supreme Court later explained, was "that an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal." *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).

The Supreme Court has declined to apply *Burks* in the absence of an appellate finding of insufficiency of the evidence. In *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), the Court considered whether the Double Jeopardy Clause is violated when a defendant is convicted on insufficient evidence in his or her first trial under Massachusetts's "two-tier" trial system. Under that system, a defendant may elect to be tried initially to a judge rather than a jury and, if convicted, has the option of having the conviction vacated and undergoing a subsequent jury trial. Lydon, who was convicted at a bench trial, sought habeas corpus relief from a federal court, arguing that a retrial would violate the Double Jeopardy Clause because the Commonwealth produced insufficient evidence to convict him at trial.

The Court ruled that the Double Jeopardy Clause would not bar a retrial, and that Lydon was not entitled under the Federal Constitution to a review of the evidence presented at the bench trial before proceeding with the second-tier trial. The Court noted the general rule "that the [Double Jeopardy] Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal." *Id.* at 308, 104 S.Ct. at 1813. It explained "that implicit in th[is] rule permitting retrial after reversal of a conviction is the concept of 'continuing jeopardy,'" a principle that applies "'where criminal proceedings against an accused have not run their full course.'" *Id.* (quoting *Price v. Georgia*, 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970)).

The Court concluded that Lydon's situation differed from Burks's because Lydon was unable to identify an event, like acquittal, that terminated jeopardy. The Court stated that "the conceptual difficulty for Lydon is that he has not been acquitted; he simply maintains that he ought to have been." *Id.* 466 U.S. at 307, 104 S.Ct. at 1813. In fact, unlike Burks, who could rest his claim upon the appellate court's determination of evidentiary insufficiency, Lydon was "faced with the unreversed determination of the bench-trial judge, contrary to Lydon's assertion, that the prosecution had met its burden of proof." *Id.* at 309, 104 S.Ct. at 1813–14. It followed that "*Burks* does not control this very different issue, and we are convinced that the Double Jeopardy Clause does not reach so far.". *Id.* at 310, 104 S.Ct. at 1814.

The Court's opinion in *Richardson,* 468 U.S. 317, 104 S.Ct. 3081, clarified even further the inapplicability of the Double Jeopardy Clause to a defendant in continuing jeopardy. In *Richardson,* the defendant, who was acquitted by a jury on one count but was ordered retried on the remaining counts after a mistrial was declared because of a hung jury, sought a ruling that the retrial would violate the Double Jeopardy Clause because the evidence at the first trial was allegedly insufficient. In rejecting this contention, the Court reasoned that "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy.". *Id.* at 325, 104 S.Ct. at 3086. The Court declined the defendant's invitation to extend *Burks* to the hung jury situation, noting that a hung jury is not the equivalent of an acquittal.

Because declaration of a mistrial due to a genuinely deadlocked jury was not a jeopardy terminating event, double jeopardy was not implicated even if the evidence presented at the first trial was insufficient to prove guilt beyond a reasonable doubt. The Court remarked, "it is quite clear that our decision in *Burks* did not extend beyond the procedural setting in which it arose." *Id.* 468 U.S. at 323, 104 S.Ct. at 3085.

■ Evans is in a position comparable to the defendants in *Justices of Boston* and *Richardson.* No appellate court has found that the prosecution produced insufficient evidence at her first trial. In fact, the Pennsylvania Superior Court made the opposite determination.

Because Evans has never been subject to a ruling by a state court similar to that made in *Burks,* the reversal of her conviction for trial error simply continues the jeopardy that was begun in her first trial. Thus, double jeopardy is not implicated, "[r]egardless of the sufficiency of the evidence at [Evans's] first trial." *Richardson,* 468 U.S. at 326, 104 S.Ct. at 3086. *See United States v. Porter,* 807 F.2d 21, 23–24 (1st Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987) ("Porter cannot argue that the vacating of his conviction for legal error, on direct appeal from his first trial, marked the end to his original jeopardy; the doctrine of continuing jeopardy, implicit in *United States v. Ball,* and made explicit more recently [in *Justices of Boston* ], has long since rejected such claims." (citations omitted)); *see also Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904) (Holmes J., dissenting) (jeopardy of first trial continued through appeal and into subsequent retrial).

It follows that Evans cannot rely on *Webb* and *Russo* as support for interlocutory habeas review. In those cases, petitioners' claims that the mistrials were not required by manifest necessity presented colorable double jeopardy claims warranting pretrial review that were analogous to the claim presented in *Burks.* Evans, in contrast, does not have a colorable double jeopardy claim and therefore has not stated "special circumstances" within the meaning of *Webb* and *Russo.* She remains in continuing jeopardy, and there is no basis for a federal habeas court to review the sufficiency of the evidence presented at her first trial. *Cf. Richardson,* 468 U.S. at 326 n. 6, 104 S.Ct. at 3086 n. 6 ("[i]t follows logically from our holding today that claims of double jeopardy such as petition-

er's are no longer 'colorable' double jeopardy claims which may be appealed before final judgment. A colorable claim, of course, presupposes that there is some possible validity to a claim.").

Indeed, any other conclusion would be almost unthinkable. If Evans's claims of evidentiary insufficiency were enough to implicate the Double Jeopardy Clause, every state prisoner who successfully argued trial error in his or her state appeal and faced retrial would be able to seek pretrial review from a federal habeas court of the quantum of evidence presented at the first trial. Failure of state counsel to follow this route would undoubtedly trigger yet another round of litigation based on a claim of ineffective assistance of counsel. It is hard to imagine a holding that could present a more draconian interference with state court criminal proceedings and that would be more inconsistent with the comity that the federal courts owe to the state courts.

## IV.

### Conclusion

For the reasons set forth above, we will affirm the district court's denial of Evans's petition for a writ of habeas corpus.