**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3762
_____

WESLEY HARMON,
Appellant

v.

MARIROSA LAMAR; THE DISTRICT ATTORNEY FOR THE
COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-11-cv-00679)
District Judge: Honorable Gene E.K. Pratter
_____

Argued September 11, 2015
_____

Before: VANASKIE, RENDELL, and SLOVITER *Circuit Judges*.

(Opinion Filed: February 10, 2016)

J. Nicholas Ranjan, Esq.
Lucas J. Tanglen, Esq. [ARGUED]
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
        *Counsel for Appellant*

Susan E. Affronti, Esq.
John W. Goldsborough, Esq. [ARGUED]
Philadelphia County Office of District Attorney
3 South Penn Square

Philadelphia, PA 19107
    *Counsel for Appellee*

_____

OPINION[*]

_____


VANASKIE, *Circuit Judge*.

This appeal in a habeas corpus proceeding brought by Appellant Wesley Harmon under 28 U.S.C. § 2254 is before us on a certificate of appealability that we issued on the following question: "whether Harmon's rights under the Double Jeopardy Clause were violated by the imposition of separate punishments for aggravated assault and attempted murder." Order, June 19, 2014, *Harmon v. Lamar, et al.*, No. 13-3762 (3d Cir. 2014). For the reasons discussed below, we hold that the consecutive sentences for aggravated assault and attempted murder arose out of a single incident and thus do violate the Double Jeopardy Clause. Accordingly, we will vacate the judgment of the District Court and remand with directions to issue a writ of habeas corpus requiring that Harmon be re-sentenced.

I.

Following a trial in the Court of Common Pleas of Philadelphia County in 2003, a jury convicted Wesley Harmon of attempted murder, aggravated assault, and possessing an instrument of crime for the May 1, 2002 shooting of Tyrone Mitchell. The Superior Court of Pennsylvania described the facts surrounding the shooting as follows:

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[Harmon] approached the victim, Tyrone Mitchell, outside of the Green Leaf Apartments in Philadelphia, where [Harmon]'s girlfriend resided. [Harmon] accused Mitchell, who was a maintenance worker and a tenant at the apartment complex, of breaking into [Harmon]'s girlfriend's apartment. During the conversation, Mitchell's five-year-old son ran up to Mitchell from behind, and Mitchell turned to pick up his son. As Mitchell's back was turned, [Harmon] shot Mitchell once in the back. Mitchell then pushed his son out of the way and turned around, momentarily grabbing [Harmon]'s gun. [Harmon] then shot Mitchell in the finger, and at least five more times in the stomach and leg. Mitchell identified [Harmon] as his assailant on his way to the hospital, where he remained in a coma for more than one month.

*Commonwealth v. Wesley*, 860 A.2d 585, 587 (Pa. Super. Ct. 2004).[1]

Throughout Harmon's trial, the Commonwealth described the shooting as a single event, repeatedly characterizing the shooting as an attempted execution. This characterization was consistent with the victim's testimony, who exclaimed that "[i]t all happened so fast. It was like once he shot me and I turned around he just kept on shooting." (App. 62.) The Commonwealth urged the jury to conclude that Harmon's actions amounted to more than just aggravated assault. Notably, the Commonwealth argued in both its opening and closing statements that Harmon had the specific intent to kill Mitchell from the time he fired the first shot. In its opening, the Commonwealth explained that "[Harmon is] charged with attempted murder. Because, number one, he shot [Mitchell] at close range in the back [with] the first shot. *That alone is an attempted murder.* Then he shot him again. And again, and again, and again. Seven times." (App. 49; emphasis added.) In its closing, the Commonwealth asserted that "[s]pecific intent

---

[1] Although Appellant's name is Wesley Harmon, a number of the state proceedings are improperly captioned *Commonwealth v. Wesley*.

3

[to kill] can be formed in an instant. *And [Harmon] pulling that trigger the first time and shooting that man in the back, that's specific intent . . . .* [All the shots] show what that man's intent was on May first of 2002." (App. 133; emphasis added).

At sentencing, the Commonwealth acknowledged that convictions for attempted murder and aggravated assault stemming from a single incident merge for sentencing purposes. Nonetheless, the prosecutor asserted that Harmon should be sentenced separately for aggravated assault and attempted murder. Contrary to the arguments made to the jury, the prosecutor took the position "that the aggravated assault happened when Tyrone Mitchell . . . gets shot in the back once. That's an aggravated assault." (App. 156.) Then, after the momentary struggle for the gun, Harmon "decides to try to kill him, and shoots him six more times while he's down." (App. 156.)

The sentencing judge "agree[d] with the Commonwealth that the first time is an aggravated assault and the next six shots are an attempt to kill Mr. Mitchell, making it an attempted murder." (App. 158.) Defense counsel did not specifically object to that proposition, but generally argued for the imposition of concurrent sentences. Ultimately, the court imposed an aggregate sentence of 32.5 to 65 years' imprisonment, consisting of consecutive terms of 20 to 40 years for attempted murder; 10 to 20 years for aggravated assault; and 2.5 to 5 years for possessing an instrument of crime.

On direct appeal, Harmon alleged that the trial court imposed illegal consecutive sentences for his attempted murder and aggravated assault convictions that arose out of a single episode. Harmon framed his argument in the context of Pennsylvania's merger doctrine, stating that "[i]n a single-episode assault with a single victim, the crimes of

4

attempted murder and aggravated assault merge for sentencing purposes." (App. 188.)

In support of this argument, Harmon cited *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994), which held that "the offense of aggravated assault is necessarily included within the offense of attempted murder; every element of aggravated assault is subsumed in the elements of attempted murder."

The Superior Court rejected his argument and adopted the view of the sentencing court that "[Harmon]'s actions constituted two separate criminal acts." *Wesley*, 860 A.2d at 593. The Superior Court agreed that Harmon's initial shot to Mitchell's back constituted an aggravated assault, after which Harmon took a substantial step toward an intentional killing by firing the remaining shots. *Id*. Although the Supreme Court of Pennsylvania initially granted Harmon's petition for allowance of appeal, it later reversed course and dismissed the appeal as improvidently granted. *Commonwealth v. Wesley*, 896 A.2d 564 (Pa. 2006).

Harmon then petitioned for collateral review under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–9546, where he again raised the illegal sentence claim. On May 15, 2008, the PCRA court entered an order denying Harmon's petition for lack of merit. Harmon appealed to the Superior Court, which affirmed the PCRA court on November 5, 2010.

On January 31, 2011, Harmon filed a pro se petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. In his petition, Harmon argued that his consecutive sentences violated the Double Jeopardy Clause of the Fifth Amendment. On March 30, 2011, a Magistrate Judge issued a report,

5

recommending that the District Court deny Harmon's petition. The Magistrate Judge concluded that Harmon's claim was not cognizable in a federal habeas proceeding because Harmon had failed to raise a double jeopardy claim during his state court appeal. The Magistrate Judge also concluded that the claim failed on its merits because Harmon "committed two distinct offenses—aggravated assault and attempted murder—both separated in time." (App. 22.) By Order entered December 19, 2012, the District Court adopted the Magistrate Judge's recommendation, denied Harmon's petition, and declined to issue a certificate of appealability.

Thereafter, Harmon filed an application for a certificate of appealability, which this Court granted with respect to Harmon's claim that his consecutive sentences for attempted murder and aggravated assault violated the Double Jeopardy Clause of the Fifth Amendment.

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291 and § 2253. Where, as here, the District Court based its decision on the state court record without holding an evidentiary hearing, we apply a plenary standard of review. *Branch v. Sweeney*, 758 F.3d 226, 232 (3d Cir. 2014). While our review of the District Court's decision is plenary, we analyze the state court's decision "with considerable deference" in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–2254. *Branch*, 758 F.3d at 232.

## III.

### A.

A threshold issue we must address is whether Harmon appropriately pursued his double jeopardy claim in the state court proceedings. Here, the District Court concluded that Harmon's claim was not cognizable by a federal court in a habeas proceeding because Harmon's "state appellate brief [did] not mention federal law or the Constitution" and he "did not allege[] that his sentence violated the United States Constitution Double Jeopardy Clause" during his state court appeal. (App. 21.)

A federal court may not grant a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, "the petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court." *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) (quoting *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir.2002)). To fairly present a claim, the petitioner "need not have cited 'book and verse' of the federal constitution." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Rather, the petitioner must present the federal claim's "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Id.* In *McCandless*, we delineated a variety of ways a petitioner can fairly present a claim, including: "[1] reliance on state cases employing constitutional analysis in like fact situations, [2] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and [3] allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* (quoting *Evans v. Court of Common Pleas, Del. Cty., Pa.*, 959 F.2d 1227, 1232 (3d Cir. 1992)). We exercise plenary review over the District Court's determinations regarding exhaustion

7

and procedural default. *Fahy v. Horn*, 516 F.3d 169, 179 (3d Cir. 2008).

In the state court proceedings, Harmon relied on *Commonwealth v. Anderson*, 650 A.2d 20 (Pa. 1994), to support his argument that his sentence was illegal. Like Harmon, the defendant in *Anderson* challenged the imposition of consecutive sentences for aggravated assault and attempted murder arising out of a shooting incident. *Id*. at 20–21. In determining that the convictions should have merged for sentencing purposes, the Pennsylvania Supreme Court analyzed *Blockburger v. United States*, 284 U.S. 299 (1932), and concluded that "there is no difference between a double jeopardy analysis and a merger analysis: double jeopardy and merger are identical." *Anderson*, 650 A.2d at 23. Harmon's reliance on *Anderson*, which "employ[ed] [a] constitutional analysis in [a] like fact situation[]," was sufficient to put the state courts "on notice that a federal claim is being asserted." *See McCandless*, 172 F.3d at 261. Therefore, Harmon fairly presented his double jeopardy claim in the state courts.

B.

In order to determine the standard of review applicable to Harmon's claim, we must next determine whether that claim was adjudicated on the merits by the Pennsylvania Superior Court. A state court does not need to give reasons in order for its decision to be deemed an adjudication "on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 100 (2011)). Rather, where a petitioner presents a federal claim to a state court and the state court denies relief, "a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson*, 133 S. Ct. at 1096. Moreover, if the state court addresses a state-law

8

claim where the state-law rule "is at least as protective as the federal standard[,] then the federal claim may be regarded as having been adjudicated on the merits." *Id.*

The Superior Court did not address the Double Jeopardy Clause or cite to any federal law. Instead, the Superior Court addressed Harmon's claim with regard to Pennsylvania's merger doctrine. Pennsylvania's merger doctrine, however, fully incorporates a defendant's rights under the Double Jeopardy Clause. *See Anderson*, 650 A.2d at 23 ("[T]here is no difference between a double jeopardy analysis and a merger analysis: double jeopardy and merger are identical. . . ."). Therefore, Harmon's double jeopardy claim "may be regarded as having been adjudicated on the merits" by virtue of the Superior Court's rejection of his merger claim. *Johnson*, 133 S. Ct. at 1096.

## C.

Where, as here, a state court has decided the merits of a petitioner's federal claim, habeas relief under AEDPA is appropriate only if the state court's adjudication of the claim "was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Grant v. Lockett*, 709 F.3d 224, 231 (3d Cir. 2013) (quoting 28 U.S.C. § 2254(d)). We accord great deference to the state court's findings of fact, which will not be deemed unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

The Superior Court found that Harmon's first shot to Mitchell's back constituted an aggravated assault. Then, only after firing this first shot, Harmon took a substantial

9

step toward intentionally killing Mitchell—a required element of attempted murder—by firing the remaining six shots. The Superior Court concluded that this "constituted two separate criminal acts." *Wesley*, 860 A.2d at 593. We find that that this factual determination is unreasonable.

The evidence presented at trial established that Harmon's shooting of Mitchell was one continuous event in which he had the intent to kill Mitchell from the very first shot. Mitchell himself testified: "It all happened so fast. It was like once he shot me and I turned around he just kept on shooting." (App. 62.) Moreover, the prosecution's theory at trial was that Harmon attempted to execute Mitchell. The prosecution repeatedly argued that Harmon had the specific intent to kill Mitchell from the time he fired the first shot. A finding that the shooting constituted two criminal acts, with Harmon not intending to kill his victim with the first shot and only forming the intent to kill after taking the first shot, is unreasonable.

Our determination that the Superior Court made an unreasonable factual finding, however, is not dispositive. As we explained in *Lambert v. Blackwell*, 387 F.3d 210, 235–36 (3d Cir. 2004), "what factual findings remain to support the state court decision must still be weighed under the overarching standard of [§] 2254(d)(2)."

### D.

Harmon contends that when this event is viewed as one criminal act, his rights under the Double Jeopardy Clause were violated. We agree. The Double Jeopardy Clause "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Multiple

punishments constitute a double jeopardy violation when the charged offenses are "the same in law *and* in fact." *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013). Offenses are the same "in law" where "one is a lesser-included offense of the other under the 'same elements' (or *Blockburger*) test." *United States v. Miller*, 527 F.3d 54, 71 (3d Cir. 2008).

In Pennsylvania, aggravated assault and attempted murder are the same "in law" because aggravated assault is a lesser included offense of attempted murder. *Anderson*, 650 A.2d at 24 ("Inasmuch as aggravated assault, the lesser offense, contains some, but not all the elements of the greater offense, attempted murder, the two offenses merge for purposes of sentencing."). Harmon's convictions are also the same "in fact" because both convictions arose from one continuous criminal act. Because Harmon's convictions for aggravated assault and attempted murder are the same in law and fact, Harmon's rights under the Double Jeopardy Clause were violated by the imposition of consecutive sentences for these two convictions.

## IV.

For the aforementioned reasons, we will vacate the District Court's order and judgment denying habeas relief and remand with directions to enter a writ of habeas corpus requiring that Harmon be re-sentenced.[2]

---

[2] We wish to acknowledge the efforts of pro bono counsel, who are to be commended for their exemplary presentation of the issues on behalf of Mr. Harmon.

11