**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1905
_____

DALIYL RAAID MUHAMMAD,
                                        Appellant
v.

SUPERINTENDENT FAYETTE SCI;
ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States
District Court for the Middle District of Pennsylvania
(D.C. Civil No. 1-08-cv-01287)
District Judge: Honorable Christopher C. Conner
_____

Argued May 25, 2021
_____

Before: GREENAWAY, JR., SHWARTZ, *Circuit Judges*, and KANE, *District Judge*.*


(Opinion Filed: August 18, 2021)

Eugene Dionne [ARGUED]
Erin Sullivan [ARGUED]
James S. Ballenger
University of Virginia Law School
580 Massie Road
Charlottesville, VA 22903

_____

* The Honorable Yvette Kane, United States District Judge for the Middle District
of Pennsylvania, sitting by designation.

*Counsel for Appellant*

Ryan H. Lysaght [ARGUED]
Dauphin County Office of District Attorney
101 Market Street
Harrisburg, PA 17101

*Counsel for Appellee*

_____

OPINION[**]

_____

GREENAWAY, JR., *Circuit Judge*.

When examining claims of ineffective assistance of counsel, we look principally at two issues – whether there was deficient performance of counsel and if so, whether there was prejudice. Here, our focus revolves around whether counsel provided effective assistance concerning the trial court's jury instructions. Appellant Daliyl Raaid Muhammad argues that prejudice abounds and because of the trial court's error in its instructions to the jury there is a reasonable probability of a different result. We disagree. For the reasons below, we will affirm.

## I.    BACKGROUND

---

[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

In January 2002, James Nickol called Muhammad to purchase marijuana from him. Muhammad agreed to meet Nickol later that evening in Harrisburg, Pennsylvania for a drug exchange. Nickol and a companion, Derrick Kleugel, then drove to Harrisburg. Upon their arrival, Muhammad informed Nickol and Kleugel that they would have to walk a few blocks to get the marijuana. Muhammad was accompanied by another man, later identified as co-defendant Michael Cameron.

"At some point while the four men were walking down South 15th Street, [Muhammad] and Cameron slowly began to lag behind the victims." App. at 193. "Gunfire then rang out." *Id.* "Nickol was shot three times in the back, three times in the stomach, and once in the hip. Kleugel was shot twice in the back and once in the hip." *Id.* Nickol testified that Muhammad climbed on top of him while holding something shiny in his hand and demanded money. Nickol handed Muhammad $500 of the $2,400 he had in his pocket and told Muhammad that the rest of the money was in Kleugel's car. "Kleugel also testified that after he fell, someone searched him and demanded money." App. at 193.

The lack of casings found at the scene suggested that the shots came from revolvers and not automatic weapons. The number of gunshot wounds suggested that more than one gun was used. Muhammad was ultimately apprehended six months later "following considerable resistance." App. at 194.

3

At trial, after closing arguments, the trial court instructed the jury that Muhammad needed to have a specific intent to kill to be found guilty of attempted homicide under state law. But the trial court also told the jury that it could convict Muhammad of attempted homicide if "the Defendant or an accomplice or a co-conspirator did the act or acts with a specific intent to kill James Nickol." App. 157.

During their deliberations, the jury asked the trial court for clarification on the elements of attempted homicide. The trial court again equivocated on the standard:

> Two things have to come together in time. Some act which you the jury find to be a substantial step toward attempting to kill someone, in this case, Mr. Nickol, and that at the same time, whoever the person is that's doing that act is either the Defendant, an accomplice or a co-conspirator, and that person has in their mind the intention to kill Mr. Nickol.

App. at 178. Trial counsel did not object to these instructions.

The jury ultimately found Muhammad guilty of attempted homicide, robbery, criminal conspiracy to commit robbery, two counts of aggravated assault, flight to avoid apprehension, escape, resisting arrest, and false identification to law enforcement authorities. Based on the jury's verdict, the trial court sentenced Muhammad to an aggregate term of thirty-seven to ninety years in prison.

Muhammad pursued claims on appeal and post-conviction applications in the Pennsylvania state courts. He argued that the trial court erred in its jury instructions and that trial counsel was ineffective for failing to object. The state courts held that the trial court's instructions were not erroneous, as they included a proper instruction that a

4

conviction for attempted homicide requires intent to commit the crime. The District Court reviewed Muhammad's federal habeas petition and similarly found that the trial judge had accurately stated the law and that counsel was not ineffective. This appeal followed.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997).

## III.    DISCUSSION

Muhammad argues that the trial court's jury instructions inaccurately stated the law on attempted homicide thereby violating his federal due process rights. He also maintains that his trial counsel was ineffective for failing to object to the jury instructions and as a result, he is entitled to a new trial.[1]

---

[1] Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a prisoner in state custody can only seek habeas relief once he has exhausted all remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy that exhaustion requirement, the defendant's constitutional claims, or their "substantial equivalent," must be "'fairly presented' to the state courts." *Lambert*, 134 F.3d at 513 (quoting *Evans v. Court of Common Pleas, Delaware Cnty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992)). This is not a high burden. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). At oral

We agree with Muhammad that the jury instructions were erroneous, and that trial counsel's failure to object to the instructions fell below the standard for competent representation. But the erroneous jury instruction was harmless, and counsel's failure to object did not prejudice Muhammad.

## A. Jury Instructions and Counsel's Ineffective Assistance

Pennsylvania law requires proof of specific intent to kill for each individual charged with attempted criminal homicide, even where the parties are accomplices or coconspirators. *See* 18 Pa. Cons. Stat. Ann § 901(a); *id.* § 2501(a). "A person commits attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id.* § 901(a).

Under *Strickland v. Washington*, a petitioner shows ineffective assistance of counsel based on the following: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). To establish deficiency of performance under the *Strickland* standard, the petitioner must show that counsel's

---

argument, the Commonwealth conceded that Muhammad presented both an ineffective assistance of counsel claim and a due process claim to the PCRA courts. We agree that the District Court correctly found that Muhammad satisfied his requirement to exhaust. We therefore reach the merits of his claims.

6

representation fell below an objective standard of reasonableness under prevailing professional norms considering all the circumstances. *Id.* at 688.

Here, the trial court correctly told the jury that a defendant needed to have a specific intent to kill to be found guilty of attempted homicide under state law, and that "[a] person cannot be guilty of an attempt to commit a crime unless he has . . . a firm intent to commit that crime." App. at 158. But the court also told the jury that it should convict for attempted homicide if "the Defendant or an accomplice or a co-conspirator did the act or acts with specific intent to kill James Nickol." App. at 157. That instruction could have been interpreted to mean that only one accomplice or conspirator needed to have such an intent. This Court has consistently held that such an instruction does not comply with federal due process requirements. *See, e.g.*, *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 395 (3d Cir. 2020); *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 288 (3d Cir. 2018); *Laird v. Horn*, 414 F.3d 419, 425 (3d Cir. 2005); *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997).

Because the trial court stated the erroneous instructions twice—once during its primary instruction and again in response to a question from the jury during deliberations—we conclude that counsel's failure to object fell below the standard of competent representation.

**B.      Prejudice**

7

Nevertheless, the erroneous jury instructions and defense counsel's failure to object to them did not prejudice Muhammad.

To show prejudice, a defendant must show that counsel's act or omission "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. According to *Strickland*,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. We must consider the totality of the evidence because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

When a claim was not procedurally defaulted and was adjudicated on the merits by the state court, we afford the state court's determinations deference under AEDPA. *Hardy v. Cross*, 565 U.S. 65, 66 (2011). In doing so, we determine whether the state court's determinations:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In this instance, because the PCRA Court adjudicated Muhammad's ineffective assistance claim on the merits, we owe AEDPA deference to its

8

finding that the jury instruction did not prejudice Muhammad. *See* App. at 280 ("[E]ven if [the trial court] gave an ambiguous instruction, the Defendant would still not have been prejudiced.").

Here, we cannot conclude that the PCRA court's prejudice finding was constitutionally unreasonable or based on an unreasonable determination of the facts. There was a quantum of strong evidence presented at trial from which a jury could conclude that Muhammad possessed an intent to kill, and from which a court could reasonably find that no different result would have occurred. Muhammad conceded there was sufficient evidence in the record placing him at the scene, and Nickol testified that Muhammad was one of the two individuals walking directly behind the victims when the shots were fired. Both victims were shot in vital areas: Nickol was shot three times in the back, three times in the stomach, and once in the hip, and Kleugel was shot twice in the back and once in the hip.

Moreover, expert testimony suggested that more than one gun was fired because of the nature of the casings and the number of shots fired.[2] "Nickol specifically identified

---

[2] Muhammad argues that the fact that he was acquitted of possession of a firearm means the jury did not think possession had been proved. To the extent that Muhammad wants the Court to infer that this acquittal undermines the intent to kill, we are unconvinced. There is no basis in case law suggesting that we should conclude that Muhammad's acquittal on the gun possession charge would necessarily raise an inference that he is not guilty on the separate charge of attempted murder. *See United States v. Powell*, 469 U.S.

[Muhammad] kneeling over him, demanding money, and holding what was likely a shiny firearm." App. at 195-96. These facts, together with the cajoling of both individuals to go to an isolated area upon their arrival to Harrisburg, are the type of evidence from which a jury could conclude that there was intent to kill. And Pennsylvania courts have held that repeated use of a deadly weapon on a vital part of a victim's body is enough to infer intent to kill. *See, e.g.*, *Commonwealth v. Randolph*, 873 A.2d 1277, 1281 (Pa. 2005) ("Appellant's use of a deadly weapon on a vital part of each victim's body is sufficient to establish specific intent to kill."); *Commonwealth v. Sepulveda*, 855 A.2d 783, 789 (Pa. 2004) (stating that when the defendant was shot in the abdomen, he was shot in a vital part of his body); *Commonwealth v. Drumheller*, 808 A.2d 893, 908 (Pa. 2002) (explaining that the defendant's targeting of the victim's chest, abdomen, and side were sufficient to convict the defendant of first-degree murder); *Commonwealth v. Hilliard*, 172 A.3d 5, 12 (Pa. Super. 2017) ("It is reasonable to infer the shooter's intent from both the number of gunshot wounds he inflicted and the use of a deadly weapon upon a vital part of the victim's body."). In all, counsel's error did not prejudice Muhammad.[3]

57, 67-68 (1984) (explaining that a defendant is not entitled to have a conviction on one count set aside because it is inconsistent with an acquittal on another count).

[3] We have concluded as part of our analysis of Muhammad's ineffective assistance of counsel claim that the instruction enabled the jury to find him guilty without having to

## IV. CONCLUSION

For these reasons, we will affirm the order of the District Court.

---

find proof that he had specific intent to kill.   But we have also concluded that this error did not prejudice Muhammad.  Such a conclusion also means that the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993) for the purposes of Muhammad's due process claim.  *Breakiron v. Horn*, 642 F.3d 126, 147 n.18 (3d Cir. 2011) ("*Strickland* prejudice and *Brecht* harmless error are essentially the same standard." (citation omitted)); *Whitney v. Horn*, 280 F.3d 240, 258 n.18 (3d Cir. 2002) (suggesting that "if a habeas petitioner meets the *Strickland* test, then he/she need not also demonstrate that the error was harmful"); *see also Bey v. Superintendent Greene SCI*, 856 F.3d 230, 242 n.65 (3d Cir. 2017).  Although in its brief the Commonwealth made no argument on harmless error related to the due process claim, therefore waiving that argument, we can reach harmless error analysis sua sponte.  *See United States v. Faulks*, 201 F.3d 208, 213 (3d Cir. 2000).